IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLOW BAY ASSOCS., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-99 (GMS) |
| | ) | |
| IMMUNOMEDICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

1. In the above-captioned diversity action, Willow Bay Assocs., LLC ("Willow Bay") alleges that Immunomedics, Inc. ("Immunomedics") breached a confidentiality agreement entered into by the parties on August 20, 1999. After a rather circuitous route through the pre-trial process, the case was eventually tried before the court as a two-day bench trial. Presently before the court are the parties' post-trial proposed findings of fact and conclusions of law. For reasons explained below, the court finds that Immunomedics did not breach the confidentiality agreement.

**FINDINGS OF FACT**[1]

2. Immunomedics is a publicly-traded biotechnology corporation which, in 1999, found itself in a precarious financial situation that caused the company to begin an urgent search for investment capital. One of the investment avenues Immunomedics explored was through

---

[1] The court makes these findings of fact after hearing the trial testimony first hand, and after a careful review of the entire record. Because the court had the benefit of observing witness demeanor in the courtroom, it was possible to make credibility determinations that aided the court in resolving conflicting testimonial evidence. Thus, although the court's findings of fact are supported by substantial evidence adduced at trial, many of those findings are also disputed by substantial evidence adduced at trial. Nevertheless, it is the court's prerogative, as the finder of fact in this case, to decide which evidence to credit and which evidence to discredit.

a somewhat well-known broker named Zanett Securities Corp. ("Zanett"). On August 19, 1999, Immunomedics' then-executive vice president, Cynthia Sullivan, met with Mark Corroon of Zanett and explained that Immunomedics was searching for between $7.5 million and $10 million dollars in order to redeem so-called "toxic" stock it had previously issued. At the conclusion of the meeting, Corroon told Sullivan that it would be "very difficult, problematic, [and] nearly impossible" to find investors to supply needed capital.

3. The next day, on August 20, Corroon faxed to Sullivan a proposed confidentiality agreement with a list of potential investors attached to the proposed agreement as Exhibit A. Although the fax cover sheet is printed on Zanett letterhead, the proposed agreement is printed on Willow Bay letterhead. (JX 1.) Willow Bay, it turns out, was a Zanett spin off (roughly speaking) to which Zanett referred potential clients it decided not to pursue for one reason or another. Willow Bay had only one employee, Louis Szilezy, who had no formal undergraduate degree, no experience in the securities field, and no experience in the area of biotechnology. That being said, Szilezy had access to Zannett's resources, and worked closely with David McCarthy, the founder of Zanett and the sole shareholder of Willow Bay. Szilezy was the CEO of Willow Bay, and his job was to find capital, largely by searching the public record to find firms with potential interest in investing with his clients. Szilezy also tried to exploit relationships McCarthy and Zanett had built over the years to find investors.

4. Sullivan had never heard of Willow Bay prior to August 20, however Corroon explained to her that Willow Bay and Zanett were closely intertwined and that Willow Bay often took Zanett clients for whom financing would be difficult to obtain. Sullivan accepted this

explanation and undertook to revise the proposed agreement. In the end, the parties agreed to protect any confidential information that might be disclosed in the course of their business dealings. Immunomedics further agreed that:

> [D]uring the period beginning on the date hereof and ending 6 months following the later of the date hereof, [Immunomedics] will not, either directly or through a third party, without the prior written consent of Willow Bay, contact or try to contact, approach, negotiate with, or have discussions with any of Willow Bay's investors or co-investors listed on Exhibit A hereto . . . .

(JX 1.) There was no direct evidence adduced at trial that Sullivan revealed the names of the potential investors to anyone other than Immunomedics' legal counsel.

5. On August 31 and September 1, Szilezy contacted most of the potential investors on Exhibit A, including a company called Paramount Investing ("Paramount"), via email. Each of those emails read more-or-less as follows::

> Willow Bay is exclusively arranging a xxxxx financing for Immunomedics, Inc. (IMMU). If you have an interest in the Company, please let me know on what terms such a financing could be accomplished.
>
> We are submitting this to you on a first-look basis. Please respond in a timely manner (within 24 hours) by indicating interest or no interest to maintain [Investing Firm Name] on a first-look option.

(JX 4.) From the record, however, it appears that Szilezy did little if any follow up to these emails. Moreover, at no time did Szilezy or anyone else from the Willow Bay/Zanett organization request confidential information from Immunomedics to woo potential investors.[2] The only firm that gave a significant response to Szilezy's meager efforts was

---

[2]The court is cognizant of the fact that publicly-traded companies are often restricted from disseminating certain information (e.g., results of clinical trials) to potential investors before that information is released to the public. However, one of the plaintiff's contentions is that Immunomedics sand bagged Willow Bay's efforts to secure financing by not keeping it apprised of confidential developments. The court is persuaded based on the evidence adduced at trial that

       JP Carey Securities, Inc. ("JP Carey"), but JP Carey merely offered to act as an additional broker in the transaction. Sullivan rejected the JP Carey proposal on November 19, 1999.

6. Meanwhile, another broker named Barry Pearl was also working on securing financing for Immunomedics. Unlike Willow Bay, however, Pearl was successful and a financing agreement was reached with Paramount on December 14, 1999. After that agreement was announced to the public, McCarthy very quickly told Sullivan that Willow Bay was entitled to a finder's fee based on the fact that Immunomedics had agreed not to deal with any companies listed on Exhibit A, including Paramount. Immunomedics refused to pay Willow Bay, but later agreed to pay a 3.5% finder's fee to Pearl for his efforts. Willow Bay subsequently filed this action for breach of contract.

7. Because Sullivan did not share Exhibit A with anyone other than legal counsel, the court finds by a preponderance of the evidence that Immunomedics realized no profits as a result of Willow Bay's disclosure of Paramount as a potential investor. The court further finds by a preponderance of the evidence that Willow Bay would not have successfully secured financing through any of the investors listed on Exhibit A even if it had been given the full six months contemplated by the confidentiality agreement.

**CONCLUSIONS OF LAW**

8. New York law controls the court's construction of the confidentiality agreement between the parties.

9. Under New York law, "[w]hen a seller's claim arises from a contract to use an idea entered

---

Willow Bay never actually requested any such information from Immunomedics. Thus, even ignoring regulatory restrictions imposed upon Immunomedics, Willow Bay's argument is not persuasive.

into *after* the disclosure of the idea, the question is not whether the buyer misappropriated property from the seller, but whether the idea had value to the buyer and thus constitutes valid consideration. In such a case, the buyer knows what he or she is buying and has agreed that the idea has value, and the Court will not ordinarily go behind that determination." *Apfel v. Prudential-Bache Secs., Inc.*, 616 N.E.2d 1095, 1098 (N.Y. 1993) (emphasis in original). Showing that the contract is supported by valid consideration is just the first step to recovery for breach of contract, however, because the plaintiff has the additional burden of showing "that profits resulted from the disclosure." *Id.* (relying on *Soule v. Bon Ami Co.*, 139 N.E. 754 (N.Y. 1923)). *See also Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 380 n.10 (2d Cir. 2000) ("In order to recover for breach of contract, a plaintiff must demonstrate some nexus or causal connection between his or her disclosure and the defendant's use of the idea, i.e., where there is an independent source for the idea used by the defendant, there may be no breach of contract, and the plaintiff's claim for recovery may not lie.").

10. In the case at bar, because the court concludes that Immunomedics did not profit from Willow Bay's disclosure, *supra* ¶ 7, there was no breach of the confidentiality agreement under New York law. Moreover, even if the agreement was breached, Willow Bay would only be entitled to nominal damages because no financing would have been secured, and therefore, Willow Bay would not have been entitled to a finder's fee.

Dated: August 4, 2006                    /s/ Gregory M. Sleet
                                          UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLOW BAY ASSOCS., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 00-99 (GMS) |
| | ) | |
| IMMUNOMEDICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

IT IS HEREBY ORDERED THAT:

    Judgment be ENTERED in favor of the defendant Immunomedics and against the plaintiff Willow Bay.


Dated: August 4, 2006                        /s/ Gregory M. Sleet
                                                                UNITED STATES DISTRICT JUDGE